JASMAINE M. LINTON,

        **Plaintiff,**

        **v.**                         **Case No. 25-C-361**

KERRY L. KUFFENKAM,

        **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jasmaine M. Linton is a prisoner who is representing himself in this 42 U.S.C. § 1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Dr. Kerry Kuffenkam showed deliberate indifference to his serious medical condition when she failed to properly address his elevated blood sugar/glucose levels. On February 6, 2026, Dr Kuffenkam filed a motion for summary judgment. Dkt. No. 40. For the reasons explained below, the court will grant the motion and dismiss this case.

### BACKGROUND

At the relevant time, Linton was housed at the Dodge Correctional Institution "Dodge," where Dr. Kuffenkam worked as a physician. Linton arrived at Dodge on October 2, 2023, and was there until January 10, 2024, at which time he transferred to Vilas County Jail. Dodge is the central reception and classification center for all adult inmates. Providers at Dodge do initial screening tests, and providers at the inmate's permanent placement facility follow up with longer-term treatment. Dkt. No. 42 ¶¶1–9, 69–70; Dkt. No. 47.

On the day Linton arrived at Dodge, he was seen by a nurse for an intake screening. She scheduled him for an appointment with Dr. Kuffenkam. That same day, Dr. Kuffenkam ordered the standard intake laboratory tests. About a week later, on October 10, 2023, Dr. Kuffenkam saw Linton for a physical and examination. Dr. Kuffenkam informed Linton that his blood sugar was elevated. She educated Linton about eating a healthy diet, avoiding salt, exercising at least 150 minutes per week, and weight control. Dr. Kuffenkam also discussed health products Linton could purchase at the canteen. According to Dr. Kuffenkam, the plan was for Linton to monitor his diet, lose weight, and exercise. Linton explains that exercise was not permitted in the dorms, he had limited space once he was moved to a cell, and he was able only to strength train when recreation was not cancelled. Linton asserts that he could not do any cardio because he had significant foot pain, but he does not describe what strength training he was able to do or detail how often he was able to strength train during the three months he was at Dodge. Linton also asserts that he had no control over the food that was served to him. He highlights that not all inmates are able to purchase food at the canteen, but he does not clarify if *he* was able to purchase food at the canteen, and if he was, what food he purchased. Dkt. No. 42 ¶¶10–30; Dkt. No. 47 at 6–7.

In light of Linton's elevated blood sugar, Dr. Kuffenkam ordered a hemoglobin A1C blood test, which is used to diagnose diabetes. An A1C level of less than 5.6% indicates no prediabetes and no diabetes; a level of 5.7% to 6.4% indicates prediabetes; and a level equal to or greater than 6.5% indicates diabetes. Linton's test results showed an A1C level of 5.8%, confirming that Linton was prediabetic. The standard of care for an A1C level of 5.8% calls for talking to the patient about controlling his blood sugars with diet, exercise, and weight loss. A person with prediabetes may be able to delay or prevent diabetes by exercising daily, eating healthy, and losing weight.

2

Dr. Kuffenkam had already instructed Linton to do this given his high blood sugar result, so she did not review the results with Linton. Dkt. No. 42 ¶¶31–44, 48; Dkt. No. 47 at 7-12.

On September 19, 2024, Linton arrived at Racine Correctional Institution. Labs revealed that his A1C level was 5.8%, the same level as when he was at Dodge. Linton's provider placed him on Metformin, which is a medication that controls a person's glucose levels. After this provider retired, a new provider took over Linton's care and cancelled his prescription for Metformin because the blood sugars of a person with an A1C level of 6% or below can be controlled with a healthy lifestyle, including a healthy diet and exercise routine. Per follow-up labs following the cancellation of Linton's medication, Linton's A1C levels have been relatively unchanged. Dkt. No. 42 ¶¶78–83.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an

3

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Linton asserts that Dr. Kuffenkam violated the Eighth Amendment when she did not provide him with adequate treatment after learning he was prediabetic. According to Linton, her instructions to lose weight through healthy eating and exercise were inadequate because he did not have control over his diet and his opportunity to exercise was limited for numerous reasons. Linton's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort . . . without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). To succeed on a § 1983 claim, a plaintiff must establish not only that a defendant violated his rights, but also that the violation caused the plaintiff injury or damages. *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

Linton was first diagnosed as prediabetic in October 2023, when labs revealed an A1C level of 5.8%. According to Linton, Dr. Kuffenkam showed deliberate indifference to his condition because she did not provide him with treatment such as medication and/or a healthier diet. Linton asserts that her general advice that he lose weight through better food choices and exercise was hollow because she knew he had no ability to do either. Fatal to Linton's claim, however, is the fact that, nearly a year later, in September 2024, Linton's A1C level remained at 5.8%, meaning that Linton suffered no harm from Dr. Kuffenkam's alleged deliberate indifference. Because, based on the record before the court, no jury could reasonably conclude that Linton suffered any injury or harm from Dr. Kuffenkam's response to his prediabetic condition, she is entitled to summary judgment.

Finally, the court notes that the parties both address Dr. Kuffenkam's response to Linton's plantar fasciitis, but the amended complaint does not state a claim based on allegations that Dr. Kuffenkam showed deliberate indifference to his complaints of foot pain. In the screening order, the court explained that Linton did not state a claim based on allegations that his self-diagnosed plantar fasciitis was not adequately addressed because his allegations were too vague for the court to reasonably infer that he suffered from an objectively serious medical condition and that Dr. Kuffenkam was deliberately indifferent to that condition. Dkt. No. 9 at 4. Shortly after the court screened the complaint, Linton filed a letter asking about what he must do to add a claim. The court explained that it could not answer questions about how to litigate a case, but it directed Linton to the litigation guide that it had sent along with the original screening order. The court also advised Linton that under Fed. R. Civ. P. 18 and 20, he could join additional claims against Dr. Kuffenkam. Dkt. No. 15. Linton never filed a motion for leave to amend his complaint to include allegations to support a claim against Dr. Kuffenkam based on her response to his complaints of foot pain. Accordingly, that claim is not before the court.

**IT IS THEREFORE ORDERED** that Dr. Kuffenkam's motion for summary judgment (Dkt. No. 40) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 1st day of May, 2026.

William C. Griesbach
United States District Judge

5

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

6